### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RUPERT CROSSLEY,<br><br>Defendant. | **CRIMINAL NO. 14-cr-10274-WGY** |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America (the "Government") respectfully submits this memorandum to assist the Court in determining the appropriate sentence to impose on Defendant Rupert Crossley ("CROSSLEY"). On October 10, 2014, CROSSLEY waived indictment and pled guilty to a four-count Information. Count 1 charged conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h); Count 2 charged conspiracy to defraud the United States in violation of 18 U.S.C. § 371; and Counts 3 and 4 charged illegally entering an airport and airport area with intent to commit a felony therein in violation of 18 U.S.C. § 46314(a)&(b)(2). For the reasons stated below and consistent with the Government's Plea Agreement[1] with CROSSLEY, the Government recommends and respectfully requests that the Court sentence CROSSLEY to a period of 24 to 30 months' incarceration, supervised release for a term of 3 years, and a mandatory special assessment of $400. The Pre-Sentence Report ("PSR") prepared by the United States Probation Office correctly calculated the Defendant's

---

[1] The Plea Agreement requires the Government to request and recommend a sentence of incarceration between 18 to 36 months and allows CROSSLEY to request any sentence he chooses.

guideline sentencing range ("GSR") at 57 to 71 months' incarceration, based on a total offense level of 25 and Criminal History Category of I.

## DEFENDANT'S CRIMINAL OFFENSES

As set forth in the PSR, in August 2012, a Cooperating Witness ("CW") informed Homeland Security Investigations ("HSI") that a JetBlue employee (later determined to be CROSSLEY), offered to assist the CW in smuggling what the CW represented to be illicit drug cash proceeds through secure airport areas at Logan International Airport ("Logan") to be transported to the State of Florida, in exchange for a cash fee.  During the investigation, CROSSLEY agreed to recruit another JetBlue employee, later identified as Alvin Leacock, in order to further evade the Transportation Security Administration ("TSA") security checkpoints and screening and to assist in the money laundering scheme.  CROSSLEY was aware that Alvin Leacock later recruited Eric Vick, another JetBlue employee, to join the cash smuggling scheme.

It was the object of the conspiracy for CROSSLEY, to use his individual airport security clearance to circumvent TSA security checkpoints and to smuggle large amounts of cash, which were represented by the CW to be drug proceeds that were to be used to further promote narcotics trafficking, from a non-secure area (*e.g.*, curbside passenger drop-off/pick-up or public restrooms near baggage claim) to a secure area of Logan (*e.g.*, passenger departure gates), in exchange for a cash payment from the CW.

Prior to each transaction, CROSSLEY met with and spoke to the CW to discuss and agree to methods and the objectives of the conspiracy.  For example, on or about August 6, 2012, CROSSLEY met with the CW in Lynn, Massachusetts.  During the meeting, the CW informed CROSSLEY that the CW needed to transport "dirty money" through Logan without detection by law enforcement authorities.  The CW advised CROSSLEY that the CW would pay CROSSLEY

$2,000 for smuggling the cash and circumventing the TSA checkpoint.     During this meeting, CROSSLEY advised the CW that it was unwise to conceal the cash in a bag at Logan and proposed to conceal the cash on his person because "…with a bag because they do … it's random but they do random … door checks. If they see you with a bag, they'll [check it]." During the same meeting, the CW asked CROSSLEY whether he knew anyone else interested in assisting the smuggling scheme.  CROSSLEY stated:  "I might know a few people ... a couple of them are out of town right now."  The CW also reiterated to CROSSLEY that the CW was involved in a narcotics trafficking organization:  "[T]he people I mess with, I mean, I've known them for a hot minute, but I mean when it comes to, you know, drug money, dude ... there ain't no trust, you know what I'm saying?"  CROSSLEY responded: "Yeah."

On August 28, 2012, CROSSLEY agreed to smuggle, and in fact, smuggled in $35,000 in U.S. currency through Logan.  On March 20, 2013, CROSSLEY agreed to smuggle, and in fact, smuggled in $50,000 in U.S. currency through Logan.  CROSSLEY directly smuggled a total of $85,000 and received a total of $4,000 as a service fee ($2,000 per transaction).  In completing these transactions, CROSSLEY smuggled cash through Logan by using his security clearance to circumvent TSA requirements and security checkpoints, and assisted the CW in the CW's purported money laundering and interstate drug trafficking activities.  The following chart lists, in chronological order, the relevant money laundering transactions, dates, the co-conspirator committing such acts, and the dollar amount of the smuggled cash:

| JetBlue Employees | Date of Transaction | Amount of Smuggled Cash |
|---|---|---|
| Rupert Crossley | Aug. 28, 2012 | $35,000.00 |
| Alvin Leacock | Oct. 14, 2012 | $57,000.00 |
| Alvin Leacock | Dec. 11, 2012 | $50,000.00 |
| Rupert Crossley | Mar. 20, 2013 | $50,000.00 |
| Eric Vick | May 23, 2013 | $50,000.00 |
| Eric Vick | July 24, 2013 | $25,000.00 |
| Eric Vick | Sept. 5, 2013 | $50,000.00 |
| Eric Vick | Jan. 30, 2014 | $50,000.00 |
| **Total** | | **$367,000.00** |

Given that CROSSLEY recruited a co-conspirator, Alvin Leacock, and was aware of another co-conspirator, Eric Vick, it was reasonably foreseeable that CROSSLEY would be responsible for the amount of cash that Alvin Leacock and Eric Vick smuggled through Logan. As noted above, CROSSLEY personally smuggled $85,000, Alvin Leacock completed two money laundering transactions for a total of $107,000 and Erick Vick completed four money laundering transaction for a total of $175,000. Therefore, CROSSLEY is responsible for a total of $367,000.00 in laundered money.

## SENTENCING RECOMMENDATION

### A.  *The Applicable Sentencing Guidelines*

#### 1.  CROSSLEY's Offense Level

The PSR sets forth a calculation of the GSR based on the above evidence. CROSSLEY's base offense level is 8, 12 levels are added because of the amount of smuggled money between CROSSLEY and his co-conspirators (*i.e.*, $367,000) and 8 additional levels are added because of specific offense characteristics (*i.e.*, CROSSLEY knew or believed that the laundered funds were narcotics proceeds and he was convicted of money laundering). (PSR ¶¶ 23-25.) The PSR correctly provides for an adjusted offense level of 28. (PSR ¶ 29.) Because CROSSLEY promptly accepted responsibility within the meaning of USSG §3E1.1, there is a three level

4

reduction for acceptance of responsibility. (PSR ¶¶ 31-32.) Therefore, CROSSLEY's total offense level is 25. (PSR ¶ 33.)

### 2.    CROSSLEY's Criminal History

CROSSLEY has no criminal convictions (PSR ¶ 36) and thus his Criminal History Category is I. (PSR ¶ 37.)

### 3.    Guideline Sentencing Range

CROSSLEY's GSR is 57 months to 71 months' imprisonment. (PSR ¶ 76.)

**B.    Sentencing Factors Under 18 U.S.C. §3553(a)**

Title 18 U.S.C. § 3553(a) requires a sentencing court to consider specific, enumerated factors when determining an appropriate sentence. These factors, *inter alia*, include: 1) the nature and circumstances of the offense and the history and characteristics of the defendant; 2) the need for the sentence imposed to reflect the seriousness of the offense to promote respect for the law; and 3) a sentence necessary to provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant.

### 1.    The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

Simply put, CROSSLEY breached airport security. CROSSLEY understood that as a JetBlue employee he would not be screened by the TSA agents and could use his security clearance to carry contraband into the secured and restricted areas of Logan. Travelers on airlines and in airports trust that airline employees such as CROSSLEY will carry out their duties without placing their safe travel at risk. CROSSLEY violated that trust. What's more, CROSSLEY understood and believed that the large amount of cash he had agreed to smuggle through Logan were narcotics proceeds. CROSSLEY's willingness to use his airport security

clearance in what he believed was to further promote narcotics trafficking is worthy of the Government's recommended 24 to 30 months' incarceration.

Soon-after his arrest and prior to indictment, CROSSLEY admitted to his wrongdoing and demonstrated remorse for the crimes he had committed.  Indeed, CROSSLEY promptly accepted responsibility for his criminal conduct by waiving indictment and pleading guilty to the Information, an avenue which Alvin Leacock and Eric Vick have yet to take.  As with his co-defendants, what is remarkable about CROSSLEY is the contrast of his instant criminal conduct and the lack of any convictions in his criminal history.  While it is troubling how easily CROSSLEY entered into the criminal conspiracy and completed the offenses, if his lack of prior criminal history is an indicator, there should be little concern of recidivism.  Particularly, a felony conviction should bar CROSSLEY from gaining employment with an airline or at an airport in the future.

    2.  <u>The Sentence Imposed Must Reflect the Seriousness of the Offense</u>

CROSSLEY engaged in serious crimes.  The security of the nation's airports is of great concern among Congress, the executive branch, and the populace in general.  Airline and airport employees who use their airport security clearance to enter secured and restricted airport areas with contraband and board airplanes to transport contraband is a serious crime that renders our airports less secure and, generally, our nation less safe.  Therefore, a sentence of 24 to 30 months' imprisonment would adequately reflect the serious nature of CROSSLEY's criminal conduct in this matter.

3. <u>The Sentence Must Provide Just Punishment for the Offense, Afford Adequate Deterrence to Criminal Conduct, and Protect the Public from Further Crimes of the Defendant</u>

CROSSLEY's crimes require a deterrent sentence in large part based on how easily CROSSLEY, who has no prior criminal history record, used his security clearance to launder money through Logan, money that he believed were the proceeds of narcotics trafficking. CROSSLEY'S GSR is greatly increased because of the amount of purported narcotics money that he and his co-conspirators smuggled through Logan, *i.e.*, $367,000 (CROSSLEY directly smuggled $85,000) and the specific offense characteristics as set forth by the USSG. Although the smuggled funds were not in reality narcotics proceeds but rather government funds used as part of the undercover sting operation, it does not diminish the fact that CROSSLEY believed he was using his airport security clearance to engage in the promotion of narcotics trafficking. Imposition of the recommended sentence of 24 to 30 months' incarceration will create an adequate deterrent to similar criminal behavior and justly punish CROSSLEY for his actions. Anything less than the Government's recommendation will not promote respect for the law nor deterrence. A shorter sentence would be less likely to dissuade those employed by airlines and airports, with no prior criminal history, considering completing the same criminal offenses from emulating CROSSLEY.

## CONCLUSION

For the above reasons, the Government recommends that this Court sentence the Defendant to a period of 24 to 30 months' incarceration, 3 years of supervised release, and a mandatory $400 special assessment.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:    */s/ Carlos A. López*
CARLOS A. LÓPEZ
DUSTIN CHAO
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that these documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Carlos A. López*
CARLOS A. LÓPEZ
Assistant United States Attorney

Date:  January 6, 2015